In re Leonard Ray BRYANT, Sandra Lee Bryant, Debtors.

No. 02–24986–SBB.

United States Bankruptcy Court, D. Colorado.

July 15, 2003.

Sharon Grossenbach, Denver, CO, Counsel to the Debtors.

**MEMORANDUM OPINION AND ORDER DENYING DEBTORS' MOTION TO REIMPOSE THE STAY ON DEBTORS' RESIDENCE LOCATED AT 1122 BLUEBIRD STREET, BRIGHTON, COLORADO, 80601 PURSUANT TO 11 U.S.C. § 105**

SIDNEY B. BROOKS, Chief Judge.

THIS MATTER comes before the Court on Debtors' Motion to Reimpose the Stay on Debtors' Residence Located at 1122 Bluebird Street, Brighton, Colorado, 80601 Pursuant to 11 U.S.C. § 105 filed on July 3, 2003 ("Motion") (Docket No. 72). The Court, having reviewed the file and being advised in the premises, makes the following findings of fact, conclusions of law and order.

## I. INTRODUCTION

The Debtors filed a Chapter 13 bankruptcy on September 19, 2002. Debtors, at the time of filing, and currently, are owners and occupants of real property located at 1122 Bluebird Street, Brighton, Colorado 80601 ("Property"). Debtors claimed their homestead exemption pursuant to COLO.REV.STAT. § § 38–41–201 and 38–41–201.5. The Debtors Chapter 13 Plan proposed to cure the arrearage on the Debtors' first mortgage with First Horizon Home Loan Corporation ("Creditor") and a second mortgage with Alegis Group.

On December 27, 2003, Creditor filed a Motion for Relief from Stay. Debtors filed a response to that Motion for Relief from Stay and on January 24, 2003, Creditor withdrew its motion.

On April 15, 2003, Debtors' case was converted to Chapter 7. Creditor filed a Motion for Relief from Stay on April 24, 2003. Creditor's Motion was unopposed and Creditor was granted relief from the automatic stay on May 21, 2003. Thereafter, the Creditor commenced foreclosure on the Property and the Property is currently set for a public trustee's sale in Adams County on July 23, 2003.

Following the conversion of the case, because the Debtors had previously filed a Chapter 7 case on October 4, 1996 (Case No. 96–22399–SBB) and received a discharge on June 28, 1997, the Debtors realized they were not eligible for a Chapter 7 discharge. Debtors then moved this Court to reconvert their case to a Chapter 13 bankruptcy. The Court granted the conversion on June 25, 2003. Debtors had until July 11, 2003 in which to file a proposed plan and amended schedules and based upon a review of this Court's docket it does not appear that they did so timely.

## II. ISSUE

There are two issues presented by the Debtors' Motion:

1. Whether this Court can, by way of a contested matter—and *not by way of adversary proceeding*—pursuant to 11 U.S.C. § 105, reimpose the automatic stay.

2. If this Court can consider the Motion as a contested matter, whether this Court may, pursuant to 11 U.S.C. § 105, reimpose the automatic stay.

The Court concludes that the relief sought must be sought by and through an adversary proceeding consistent with Fed. R.Bankr.P. 7001(7), reimpose the automatic stay. Moreover, even if this Court were to consider this matter as a contested matter, this Court concludes that it cannot reimpose the stay under either 11 U.S.C. § 105(a) or Fed.R.Bankr.P. 9024, which incorporates Fed.R.Civ.P. 60(b) in bankruptcy proceedings. Thus, the Debtors' Motion shall be DENIED, without prejudice.

## III. DISCUSSION

### A. *Chrysler Capital Corp. v. Official Comm. of Unsecured Creditors (In re Twenver, Inc.), 149 B.R. 950 (D.Colo.1993)*

Debtors cite to the case *Chrysler Capital Corp. v. Official Comm. of Unsecured Creditors (In re Twenver, Inc.)*, 149 B.R. 950 (D.Colo.1993) for the proposition that this Court has the power under 11 U.S.C. § 105 to reimpose the automatic stay. An analysis of this case is necessary for the disposition of the within matter.

In *Twenver*, the official committee of unsecured creditors moved to reinstate a stay to prevent a creditor from foreclosing on its collateral. The debtor was the owner and operator of a television in Denver, Colorado and filed for relief under Chapter 11 of the Bankruptcy Code. Despite several attempts to put together a plan of reorganization, the case languished for two years. Because there was no successful plan of reorganization, the creditor sought relief from the automatic stay to exercise its right under a security agreement. The creditor argued that the property (almost all of debtor's property and a broadcasting license) securing its loan were not adequately protected and were not necessary for an effective reorganization. The official committee of unsecured creditors objected to the relief, but, nevertheless, the bankruptcy court granted relief from the automatic stay.

Seven days after the entry of the order granting relief from the automatic stay, the official committee of unsecured creditors sought relief from the court's order under Fed.R.Civ.P. 59 and 60, arguing that it was unaware of a pending offer to by the station and, therefore, there was a substantial change in circumstances justifying relief from the order.[1] The bankruptcy court held that it could not vacate its orders under Rule 59 or 60 because the committee knew or should have known of the pending offer to buy the station.[2] However, the Court reimposed the stay pursuant to its equitable powers under 11 U.S.C. § 105, finding that the standards for granting such injunctive relief were satisfied.[3]

The United States District Court for the District of Colorado, on appeal, concluded, first, that the creditor had not obtained any vested rights in the collateral since

---

1. Specifically, the official committee of unsecured creditors argued that it was unaware of a pending offer to buy the station from the station manager at the time of the hearing on the motion for relief from automatic stay. Under the station manager's offer and a corresponding reorganization plan, the assets of the debtor would not be liquidated and the station would continue to offer programing and would continue to employ 40 persons. The committee argued that the station manager's offer would be more favorable to unsecured and administrative creditors and no less favorable to the creditor seeking stay relief.

2. The conclusion is also made by this Court in this case.

3. The District Court did not address whether the case needed to be considered as an adversary proceeding under Fed.R.Bankr.P. 7001(7)

there was no foreclosure or sale of the property. Hence, there was no limitation on the court as a result of the "vesting" of the property out of the hands of the estate and into the hands of the creditor so as to preclude the bankruptcy court's exercise of authority under 11 U.S.C. § 105.

Second, the District Court concluded that orders granting relief from the automatic stay were analogous to an injunction as opposed to a final money judgment and, as a consequence, the court, pursuant to 11 U.S.C. § 105 could review and change orders already decreed. Specifically, the Court concluded that it had authority under 11 U.S.C. § 105(a):

> to enjoin a creditor from proceeding against the debtor or property of the bankruptcy estate following the entry of a decision on the merits relieving the creditor of the automatic stay. *This opportunity does not, however, allow a party to relitigate issues that have previously been determined. Only proof of a substantial change in circumstances will justify changing what has been decreed.*

*Id.* at 954 (quoting *Salzer v. Gick (In re Gick)*, No. 91–1027, 1991 WL 119153 (Bankr.N.D.Ind.1991)) (emphasis added). Here, the Debtors have not demonstrated *any* change in circumstances so as to justify the relief requested. The relief requested simply appears to be a relitigation of issues that have previously been determined.

Third, the District Court concluded that under the four-part test for application of injunctive relief,[4] creditor did not dispute the findings of fact supporting a finding

that the elements of the four-part test were met. As a result, the court affirmed the bankruptcy court's judgment.

Noticeably absent from the decision is any discussion as to whether the relief requested needed to be pursued by way of an adversary proceeding.

### B. *This Court's Equitable Power*

■ 11 U.S.C. § 105 grants this Court significant discretionary power, akin to the All Writs Act, 28 U.S.C. § 1651. Nevertheless, it does not give this Court unfettered discretion to act in a manner inconsistent with other provisions of the Bankruptcy Code and Rules. *See e.g., United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986). This Court concludes that, under general rules of statutory construction, and in light of the 1999 amendment to Fed.R.Bankr.P. 7001(7), utilizing 11 U.S.C. § 105 to reimpose the stay would contravene the express provisions and intent of in the Bankruptcy Code and Rules.

■ First, an initial observation: conversion of a case from one chapter to another under the Bankruptcy Code does *not* automatically reimpose the automatic stay. 11 U.S.C. § 348. In essence, this is what is requested by the motion. The automatic stay is similar to a temporary restraining order. *See* H.Rep.95–595, p. 344; S.Rep. 95–989, p. 55, U.S.Code Cong. & Admin. News 1978, pp. 5841, 6300; *see also, In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983) (automatic stay is a broad temporary injunction). It is temporary. Once relief from the automatic stay has been granted, it does not reinstate at the behest

---

4. The Court adopted the four-part test set forth in *Smith v. Citifed (In re Smith)*, 111 B.R. 102, 104–105 (Bankr.E.D.Pa.1990). Under this test, a party seeking injunctive relief must show: (1) a substantial likelihood of success on the merits, (2) irreparable harm,

(3) less harm to the opposing party, and (4) no violation of the public interest. *Chrysler Capital Corp. v. Official Comm. of Unsecured Creditors (In re Twenver, Inc.)*, 149 B.R. 950, 953 (D.Colo.1993).

of the Debtor except under extraordinary circumstances.

■ Second, it would appear that an adversary proceeding is necessary here. Fed.R.Bankr.P. 7001(7) provides that an adversary proceeding must be brought if it is:

> a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12 or chapter 13 plan provides for the relief...

While Rule 7001 was amended effective December 1, 1999 to make it clear than an adversary proceeding is *not* necessary to obtain injunctive or other equitable relief *that is provided for in a plan* when substantive law permits such relief, the relief sought by Debtors here is not consistent with substantive law as the Court does not generally reinstate—nor is it authorized to routinely—reinstate the automatic stay once a creditor has been granted relief therefrom. Moreover, since the relief requested is not sought under Fed.R.Civ.P. 60, it does not appear that this matter is appropriately handled as a contested matter. While the Tenth Circuit has permitted requests to reinstate the stay in the context of Fed.R.Civ.P. 60(b), the Tenth Circuit has concluded that it is not appropriate to consider *reimposition* of the automatic stay under 11 U.S.C. § 105 as a contested matter. *See State Bank of Southern Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, (10th Cir.1996). In *Gledhill*, the Court held that:

> The distinction between a Rule 60(b) motion to vacate an order lifting the stay and a request to reimpose the automatic stay under 11 U.S.C. § 105(a) determines whether the movant may proceed by motion as a contested matter under Rule 9014, or must file an adversary proceeding under Rule 7001. Courts have uniform-

ly held that a request to reimpose the automatic stay under 11 U.S.C. § 105(a) constitutes "a proceeding to obtain an injunction or other equitable relief" under Rule 7001(7), which requires the filing of an adversary proceeding.

*Id.* at 1079.

■ Third, even if this Court were to consider the relief pursuant to 11 U.S.C. § 105(a), unlike *Twenver*, the movant here does *not set forth any basis(es) for seeking injunctive relief*, that is: (1) that there is a substantial likelihood of success on the merits, (2) irreparable harm, (3) less harm to the opposing party, and (4) no violation of the public interest. *Twenver*, 149, B.R. at 953. The only real basis for seeking reimposition of the stay is to allow the Debtors more time to forestall the Creditor. Most importantly, this Court would find that there is a public interest here that would be violated if the relief requested were granted. As this Court recently stated in *In re Frasier*, it is not inclined to neutralize and/or vitiate the final of orders of the Court barring extraordinary circumstances. 294 B.R. 362 (Bankr.D.Colo. 2003). "The strong policy and purpose of the bankruptcy laws in ensuring 'prompt and effectual administration and settlement of the estate' requires that an interested person, including the debtor, act promptly to preserve its rights." *Id.* at 369 (citations omitted). The precedent set by granting the relief requested herein would be significant. That is, debtors could seek reimposition of the stay anytime, for no apparent reason whatsoever, and stop a creditor with an order granting stay relief as the debtors would see fit. In effect, the order granting relief from stay would be meaningless.

Fourth, if the Debtors' Motion is considered a motion pursuant to Fed.R.Bankr.P. 9024, incorporating Fed.R.Civ.P. 60, the

Debtors make no allegation of mistake, inadvertence, excusable neglect, newly discovered evidence or fraud.[5] Indeed, Debtors *recite no reason whatsoever* for the relief requested and they appear to have failed to file a plan which cures, or purports to cure, their home mortgage arrearage.

## IV. CONCLUSION AND ORDER

For the reasons stated above,

IT IS THEREFORE ORDERED that the Debtors' Motion is hereby DENIED, without prejudice to the refiling as an adversary proceeding.

---

5. Counsel, perhaps wisely, did not seek to relief from the May 21, 2003 order granting relief from the automatic stay under either Fed.R.Civ.P. 59 or 60 in light of the court's ruling in *Twenver*, and for the reason that the grounds under which relief from the order could be granted could not be met in this case.